Opinion filed August 22, 2019



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00234-CV

_____

## RHI TECH SERVICES, LLC, Appellant

## V.

## DAN OWENS D/B/A OWENS SERVICE ELECTRIC AND DRO, LLC, Appellees

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CV51894**

### M E M O R A N D U M   O P I N I O N

Appellant, RHI Tech Services, LLC (RHI), appeals from a summary judgment granted by the trial court in favor of Dan Owens d/b/a Owens Service Electric and DRO, LLC, Appellees. In two issues on appeal, RHI argues that the trial court erred in granting Appellees' motion regarding RHI's claims for (1) conversion and (2) money had and received. Because we hold that RHI failed to bring forth

sufficient evidence to raise a fact issue on essential elements of both claims, we affirm.

*Background Facts*

RHI alleged that it entered into a Master Service Agreement (the Agreement) with an independent contractor, Paul Hunter (Hunter), whereby Hunter was to provide general service and repair work, "including electrical, mechanical, and related oilfield service activity," to RHI's customers. Under the terms of the Agreement, Hunter was authorized to order and pick up parts and equipment from Warren Power & Machinery, Inc. (Warren) on RHI's credit account with Warren. RHI alleged that, "on numerous occasions and without RHI's knowledge and authorization, Hunter ordered and received from Warren parts and equipment on behalf of himself or other unknown parties. Hunter charged those parts and equipment to RHI's account with Warren." RHI further alleged that Hunter then wrongfully took and sold those parts to Appellees. After Warren sued RHI for payment on RHI's account with Warren, RHI impleaded Hunter and Appellees as third-party defendants, alleging claims for (1) conversion and (2) money had and received. RHI alleged that Appellees had sold, disposed, or remained in possession of the parts and equipment charged to RHI's account by Hunter.

In response, Appellees filed a motion for no-evidence summary judgment. Although Appellees admitted that they had purchased parts from Hunter, Appellees argued that, despite conducting "months of discovery," RHI had been unable to show "any piece of evidence indicating that those parts originated from Warren" or that "Hunter did not have clear title to those specific parts." Thus, Appellees argued that RHI's allegations were "based entirely upon speculation rather than upon even an iota of evidence." Appellees stressed that, at most, RHI had demonstrated that Appellees purchased parts from Hunter that were "extremely common" in the industry and "could have originated from any number of sources." Appellees argued

2

that RHI had not produced any documents indicating the origins of the parts sold by Hunter to Appellees or establishing that Appellees purchased specific parts rightfully belonging to RHI. Instead, Appellees argued that RHI was offering mere guesses. Appellees also pointed to the deposition testimony of Mark Rittenhouse, a principal of RHI, in which he admitted that he did not have enough information to identify the specific parts that RHI alleged were received by Appellees.

RHI filed a response to Appellees' no-evidence motion. RHI attached affidavits from Jan Rittenhouse (RHI's manager) and Kerwin Stephens (RHI's attorney) to the response. Included with Jan Rittenhouse's affidavit were invoices demonstrating sales from Warren to RHI for numerous parts. Attached to Stephens's affidavit were (1) excerpts from Jan Rittenhouse's deposition, (2) excerpts from Dan Owens's deposition, (3) discovery responses from Hunter to RHI, and (4) RHI's discovery responses to Appellees. Jan Rittenhouse's deposition testimony and affidavit explained that she believed Appellees were in possession of the disputed parts because (1) Warren told RHI that Hunter was working for Appellees, (2) "Hunter had to have a market for those parts," and (3) invoices purporting to show sales from Hunter to Appellees were for identical parts. However, Jan Rittenhouse's deposition testimony also showed that, when questioned about the disputed parts, Jan Rittenhouse admitted that, although RHI knew Hunter received parts from Warren, "[w]hat he did with [the parts] after that we have no idea." Similarly, in deposition testimony, Owens stated that, although Appellees purchased parts from Hunter, Hunter told Appellees that the parts belonged to him and were from a previous business. Owens stated that Appellees "took [Hunter] at his word."

Following a hearing on Appellees' motion for no-evidence summary judgment, the trial court granted Appellees' motion thereby dismissing RHI's claims against Appellees. This appeal followed. We note that RHI obtained judgment against Hunter in the amount of $103,000 plus attorney's fees, that Hunter did not

3

file a notice of appeal, and that Warren's claims against RHI were severed into a separate cause. Thus, those claims are not before this court at this time.

*Analysis*

In two issues, RHI argues that (1) the trial court erred in granting Appellees' no-evidence summary judgment motion with respect to RHI's claim for conversion and (2) the trial court erred in granting Appellees' no-evidence summary judgment motion in regard to RHI's claim for money had and received. Conversely, Appellees argue that RHI failed to produce more than a scintilla of evidence that Appellees "actually received parts that were charged to RHI's account with Warren"—an essential element of both of RHI's claims. Thus, Appellees urge us to affirm the trial court's grant of their no-evidence motion for summary judgment. We agree with Appellees and overrule RHI's two issues.

The party that files a no-evidence motion for summary judgment alleges that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). The adverse party then must respond with evidence to raise a genuine issue of material fact on each of the challenged elements in the claim or defense. *See id.* A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

With a no-evidence motion, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* at 751 (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* (citing TEX. R. CIV. P. 166a(i); *Wal–Mart Stores, Inc. v. Rodriguez*,

92 S.W.3d 502, 506 (Tex. 2002)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharm.*, 953 S.W.2d at 711); *see Evans v. Globe Life & Accident Ins. Co.*, No. 11-13-00092-CV, 2014 WL 5565007, at *2–3 (Tex. App.— Eastland Oct. 31, 2014, no pet.) (mem. op.).

Here, RHI alleged claims for conversion and money had and received. A conversion occurs when one person makes an unauthorized, wrongful assumption and exercises dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied). Thus, to "establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Tex. Integrated Conveyor Sys, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365–66 (Tex. App.—Dallas 2009, pet. denied). Similarly, to prove a claim for money had and received, a plaintiff must show that a defendant holds money that, in equity and good conscience, belongs to the plantiff. *MGA Ins. Co v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.).

Appellees argue that RHI failed to present more than a scintilla of evidence that Appellees actually possessed property rightfully belonging to RHI—an essential element of both of RHI's claims. *See id.*; *Tex. Integrated Conveyor Sys*, 300 S.W.3d

5

at 365–66.  Although RHI presented evidence, in the form of invoices, that Hunter bought parts from Warren, the only evidence presented tending to show that Hunter may have then sold those same parts to Owens were the affidavits from Jan Rittenhouse and Stephens and the attached deposition testimony of Jan Rittenhouse and Owens.  Although Owens admitted that Appellees purchased parts from Hunter, Owens stated that Hunter claimed he owned the parts himself from a previous business.  Owens stated that they took Hunter at his word and did not have reason to believe that Hunter had obtained the parts from Warren.

Although Jan Rittenhouse concluded that Hunter sold the parts purchased from Warren to Appellees, Jan Rittenhouse's conclusion is mere speculation.  *See King Ranch*, 118 S.W.3d at 750–51.  Jan Rittenhouse based her assumption on information she had been told—that Hunter was working for Owens—along with alleged invoices showing that identical parts had been sold by Hunter to Appellees.  However, these invoices are not included in the record, and even if they had been, invoices showing that equipment parts common in the oil and gas industry were sold to Appellees does not show that these common parts were the *exact, specific* parts wrongfully obtained by Hunter on RHI's account with Warren.[1]  Although it is possible that Hunter purchased parts on RHI's account and then wrongfully sold them to Appellees, it is equally possible that Hunter obtained the parts sold to Appellees from elsewhere.  Jan Rittenhouse herself admitted this in her deposition

---

[1]We note that, in its response to Appellees' motion for summary judgment, RHI relied in part on its own interrogatory responses.  A party may not resort to its own answers to interrogatories to establish the existence of a genuine issue of material fact in response to a motion for summary judgment. *E-Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 857 (Tex. App.—San Antonio 2017, no pet.); *Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 330 (Tex. App.—Eastland 2000, no pet.); *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 86 (Tex. App.—San Antonio 1997, pet. denied); *see* TEX. R. CIV. P. 197.3; *see also Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998) (decided under former version of Rule 197.3).  We also note, however, that, in its answers to Appellees' interrogatories, RHI asserted that fuel injectors obtained by Hunter from Warren in March and April 2015 were allegedly received by Appellees between May 24, 2015, and January 1, 2016, with a majority of the alleged invoices dated in September, October, and December 2015—months after Hunter had obtained fuel injectors from Warren.

6

excerpt—although confident that Hunter obtained the parts from Warren, Rittenhouse remarked: "What he did with them after that we have no idea."

Because RHI failed to produce more than a scintilla of evidence that Appellees possessed specific property rightfully belonging to RHI, the trial court properly granted Appellees' no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i).  We overrule RHI's two issues.

*Conclusion*

We affirm the judgment of the trial court.

KEITH STRETCHER

JUSTICE

August 22, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.